DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from the decision of the Fulton County Court, Western District, Wauseon, Ohio, which denied, on June 8, 2004,[1] the motion to suppress filed by
 {¶ 2} appellant, Michael D. Draper. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 3} The undisputed facts are that, on December 31, 2003, between midnight and 1:00 a.m., Wauseon police officers were dispatched to Jessica Armstrong's apartment on a complaint of loud music and underage drinking. After confirming that loud music was coming from Armstrong's second floor apartment, Officers Keith O'Brien and Brian Courtney knocked on Armstrong's ground-level apartment door. A guest in Armstrong's home answered the door and went to retrieve Armstrong, leaving the door open. Without having been granted permission to enter, the police climbed the stairs that led directly into Armstrong's living space. Officers testified at the suppression hearing that after reaching the top of the stairs they saw evidence of what appeared to be underage drinking and possible drug paraphernalia. Appellant was found locked in the bathroom flushing marijuana. Appellant was arrested and charged with having drug paraphernalia, in violation of R.C. 2925.14(C); obstructing official business, in violation of R.C. 2921.31; underage consumption, in violation of R.C. 4301.69(E)(1); and possession of marijuana, in violation of R.C. 2925.11(A).
 {¶ 4} At the suppression hearing, Armstrong testified that she and the six guests who were found in her apartment had been attending a bonfire party for a mutual friend who was leaving for college. Because it was cold outside, the party-goers relocated to Armstrong's home at approximately 11:00 p.m., on December 30, 2003. Armstrong testified that she drove the guests to her apartment and, on the way, invited them all to spend the night. Armstrong testified that appellant and his girlfriend, who was also present, had never spent the night, even though they had been invited many times before. Armstrong, however, was "pretty positive" they would be spending the night that evening "[b]ecause a friend was leaving for college and we were trying to hang out some before he left." Nevertheless, appellant had no toothbrush, razor, clothing, or pajamas in Armstrong's residence.
 {¶ 5} The trial court found that Armstrong's testimony was "completely without any believability whatsoever," and denied appellant's motion to suppress. Thereafter, appellant entered no contest pleas to all charges on June 29, 2004, and was sentenced as follows: $250 fine and ten days in jail on the drug paraphernalia conviction, and 16 hours of community service, with the ten days jail time being suspended upon appellant receiving no other drug offenses for two years; $250 fine and ten days in jail for obstructing official business, with $150 of the fine and the days in jail being suspended upon no similar offense for two years; $250 fine and ten days in jail for underage consumption, and 16 hours of community service, with the ten days in jail being suspended upon no alcohol offense for two years; $100 fine for the possession of marijuana with a six month driver's license suspension. On appeal, appellant raises the following sole assignment of error:
 {¶ 6} "The trial court erred to the prejudice of appellant by denying his motion to suppress, as the evidence against him was obtained in violation of his Fourth, Fifth and Fourteenth Amendment rights secured by the United States Constitution and Article I, Sections 10 and 14, of the Ohio Constitution."
 {¶ 7} Relying on State v. Davis (1999), 133 Ohio App.3d 114, Statev. Scott (1999), 135 Ohio App.3d 253, and State v. Christian (2004), 6th Dist. No. F-04-003, 2004-Ohio-3000, appellant argues that because the officers could hear the music outside of Armstrong's apartment, they could have issued the citation for loud music, a misdemeanor violation, without entering the premises. Appellant further argues that the police lacked probable cause to believe that an underage party was taking place, because they saw no evidence from outside the apartment building, and, therefore, their entry was unconstitutional. Appellant further argues that he was a long-time friend and invited overnight guest of the tenant, Armstrong. As an invited overnight guest, appellant asserts that he had a "legitimate expectation of privacy" in Armstrong's bathroom and, therefore, is entitled to assert that his Fourth Amendment rights were violated. See Rakas v. Illinois (1978), 439 U.S. 128; Minnesota v.Olson (1990), 495 U.S. 91; and Minnesota v. Carter (1998), 525 U.S. 83.
 {¶ 8} It is well-settled that the "`rights assured by theFourth Amendment are personal rights, [which] * * * may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'" Rakas v. Illinois (1978),439 U.S. 128, 138, citing Simmons v. United States (1968), 390 U.S. 377,389.[2] As such, these rights cannot be vicariously asserted. Aldermanv. United States (1969), 394 U.S. 165, 174. A defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched. State v. Dennis
(1997), 79 Ohio St.3d 421, 426.
 {¶ 9} In considering whether a challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it, we must determine whether the disputed search and seizure infringed on an interest of the defendant, which theFourth Amendment was designed to protect, as opposed to an interest of a third party. Rakas at 140; see, also, United States v. Payner (1980),447 U.S. 727, 731. According to the United States Supreme Court, "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas at 143, citing Katz v. United States
(1967), 389 U.S. 347, 353. A legitimate expectation of privacy means more than a subjective expectation of not being discovered. Rakas, 143, at fn 12. Rather, for a subjective expectation of privacy to be legitimate it must be "one that society is prepared to recognize as `reasonable.'" Id., citing Katz at 361 (Harlan, J., concurring).
 {¶ 10} A guest at a party has no expectation of privacy and, therefore, cannot raise a Fourth Amendment claim regarding the search of the premises or the seizure of items found therein. United States v.Adamo (1984), 742 F.2d 927, 947-948. See, also, State v. Grier (Nov. 25, 1987), 1st Dist. No. C-860714, and State v. Christian, 2004-Ohio-3000. The United States Supreme Court, however, has held that status as an overnight guest is sufficient "to show that a defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable." Minnesota v. Olson (1990), 495 U.S. 91, 96-97. In making this determination, Olson stated the following rationale:
 {¶ 11} "To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.
 {¶ 12} "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. * * *." Id. at 98-99.
 {¶ 13} In this case, Armstrong did not raise her Fourth Amendment rights with respect to the officers' search of her home. As such, in order to assert the unconstitutionality of the officers' search, appellant has the burden of establishing that his own Fourth Amendment rights were violated. Appellant must therefore establish that he had a legitimate expectation of privacy in Armstrong's home and that the officers conducted an illegal search and seizure.
 {¶ 14} Clearly, an overnight guest may claim the protection of theFourth Amendment. Olson, supra. The only evidence in this case that appellant was an overnight guest came from Armstrong's testimony that she had invited him to stay. The trial court, however, found Armstrong's testimony to be "completely without any believability whatsoever." It is well established that at a suppression hearing, "the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20. We must therefore defer to the trial court's finding regarding the credibility of Armstrong's testimony. SeeState v. Brown (2003), 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 15, citingState v. Moore (1998), 81 Ohio St.3d 22, 31. Accordingly, we find that appellant failed to meet his burden of establishing that he was an overnight guest who had a legitimate expectation of privacy.
 {¶ 15} Even if we presume for the sake of argument that appellant had been invited to spend the night in Armstrong's apartment, we nevertheless find that appellant failed to establish that he had an expectation of privacy in Armstrong's apartment that "society is prepared to recognize as reasonable." See Olson, 495 U.S. at 96-97. Appellant was not traveling, was not visiting anyone out of town, was not between homes and was not house-sitting. See Id. at 98. Moreover, there was no indication that appellant sought shelter in Armstrong's home because it would provide him with privacy, a place where he and his possessions would not be disturbed by anyone but his host and those his host allows inside, and where he would be safe during sleep, while he would be at his most vulnerable. See Id. at 99.
 {¶ 16} Rather, we find that appellant had no possessions with him indicating his intention to stay the night, there was no indication when or if he or anyone else was planning on sleeping at Armstrong's, and, in fact, given the noise complaint regarding the premises, there was arguably too much noise and commotion in the apartment for appellant to sleep. At best, appellant was invited on the spur of the moment to stay at Armstrong's in order to continue to "hang out" and party before their mutual friend left for college. As discussed above, a guest at a party has no legitimate expectation of privacy and, therefore, cannot assert that a search in another's home during a party violated hisFourth Amendment rights. See Adamo, 742 F.2d at 947-948; Grier, 1st Dist. No. C-860714, and Christian, 2004-Ohio-3000, at ¶ 14.
 {¶ 17} We find that the facts in this case are akin to those in Statev. Moore, 2d Dist. No. 20198, 2004-Ohio-3783. In Moore, the defendant claimed to be an invited overnight guest in a hotel room. Nevertheless, the court held that he did not have an expectation of privacy that society was prepared to recognize as reasonable because the defendant had gone to the hotel room for the purpose of a party, had brought no personal belongings to the room, had no key to the room, was not sleeping in the room at 2:45 a.m., and there was no indication that he intended to do so, since the bed was made and there were other people in the room with him making so much noise that a complaint was made to the police. See Moore at ¶ 11-13.
 {¶ 18} Based on the foregoing, we find that appellant failed to establish that he had a legitimate expectation of privacy in Armstrong's apartment. As such, we find that appellant failed to establish a violation of his rights against unlawful search and seizure, or any other constitutional provision cited by appellant. Accordingly, insofar as appellant had no legitimate expectation of privacy, we need not consider whether the police officers' actions in this particular case constituted an unlawful search and seizure of Armstrong's apartment. Appellant's sole assignment of error is therefore found not well-taken.
 {¶ 19} On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Fulton County Court, Western District, Wauseon, Ohio, is affirmed. Pursuant to App.R. 24, court costs of this appeal are assessed to appellant pursuant to App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
[1] The judgment entry denying appellant's motion to suppress was journalized on June 29, 2004.
[2] Courts have referred to the issue of whether a criminal defendant can claim a violation of his Fourth Amendment rights, as to whether the defendant has "standing". The United States Supreme Court in Rakas,
however, held that because Fourth Amendment rights are personal in nature, the "definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Rakas, supra at 140. See, also, Minnesota v. Carter,525 U.S. at 87.