decision and journal entry {¶ 1} This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 2} CARR, Judge. *Page 2 
 {¶ 3} Defendant-Appellant Jesse Gulley appeals from his conviction in the Stark County Court of Common Pleas. This Court affirms.
 I. {¶ 4} On May 17, 2005, Canton City Police Officer John Dittmore responded to a dispatch call reporting drug activity at the 1300 block of Plain Avenue, Northeast. When Officer Dittmore arrived, he did not see any suspicious individuals, but he did see a white Escalade parked on the street of the 1200 block. Officer Dittmore believed that the vehicle belonged to Victwan Dorsey, a known drug offender in the area. Accordingly, he positioned his unmarked car to the north of the Escalade and began to observe the vehicle. He also radioed other officers, notifying them of his position. Officer Dittmore spotted two individuals in the Escalade; one in the driver's seat and one in the front passenger's seat. As his fellow officers approached in their unmarked car, Officer Dittmore witnessed Gully step out of the Escalade and begin to walk across the street to another parked vehicle. Officer Dittmore relayed this information to the approaching officers, who quickly pulled over near the Escalade and exited their car.
 {¶ 5} When Officers Shawn Overdorf and Craig Riley stepped out of their unmarked car Officer Overdorf asked Gulley to come over and speak to him. Gulley immediately began to run southbound, past the parked vehicle, and around the back of a house on the same side of the street. Officer Overdorf chased Gulley and witnessed him run into the enclosed porch on the back side of the house. The door to the porch closed behind Gulley as he ran inside, but Officer Overdorf was able to see Gulley through the translucent porch enclosure. As he opened the door and entered the glass enclosed porch, Officer Overdorf saw that Gulley had stuck his hands into a "bubble lid" trash can. Fearing that Gulley was reaching for a weapon, Officer Overdorf pushed Gulley away from the trash can and placed him in handcuffs. He then pulled the lid off the trash can. One bag of crack cocaine fell to the floor while another bag remained perched on top of the garbage inside the can. As a result of this incident, the officers placed both Gulley and Victwan Dorsey under arrest. The officers did not inform Gulley of his Miranda rights.
 {¶ 6} During the booking process at the police station, Gulley asked Officer Riley what level of felony he was being charged with. When Officer Riley explained that it would depend upon the weight of the cocaine, Gulley responded, "well, it's less than two ounces."
 {¶ 7} On September 6, 2005, Gulley filed a motion to suppress challenging the basis for his arrest. The trial court held a hearing on September 7, 2005. During a break in the hearing, Gulley began to yell at Officer Overdorf and Officer Dittmore. He accused them of lying on the stand and made several statements, including: (1) "[I have] shoes that cost more than the 43 grams that [I] was caught with;" (2) "[I won't] be caught in Canton again * * * [I] was just doing Victwan a favor;" (3) "[I] only deal with people in Miami and California now;" and (4) "[I] only deal in large amounts." Ultimately, the court determined that the officers had a proper basis to investigate Gulley, follow him when he ran from *Page 3 
them, and arrest him upon finding the crack cocaine. The court later determined that the State could introduce Gulley's aforementioned statements during trial.
 {¶ 8} After the suppression hearing, Gulley was released on bond. When he failed to appear at his next hearing, however, a warrant was issued for his arrest. Police eventually located Gulley in California and returned him to Ohio for his trial. Gulley filed a motion in limine asking the court to prohibit the State from raising the issue of his flight to California. The court denied the motion and instructed the jury that it could take Gulley's alleged flight into consideration when determining his guilt.
 {¶ 9} The jury found Gulley guilty of possession of cocaine pursuant to R.C. 2925.11, a felony of the first degree. Subsequently, the trial court sentenced Gulley to nine years in prison and a $20,000 fine. Gulley has timely appealed from his conviction in the Stark County Court of Common Pleas, raising three assignments of error.
 II. ASSIGNMENT OF ERROR I {¶ 10} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS."
 {¶ 11} Gulley argues that the trial court improperly denied his motion to suppress because the arresting officers violated his Fourth Amendment rights by entering the residence into which he ran without a warrant or permission. Because we find that Gulley lacks standing to raise aFourth Amendment claim, we do not reach the merits of his argument.
 {¶ 12} Initially, we note that Gulley's first assignment of error is devoid of any specific references to the record or citations to legal authority in support of his argument. Appellant has the burden of demonstrating an error on appeal. See App.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Untied, 5th Dist. No. CT2006-0005,2007-Ohio-1804, at ¶ 141, quoting State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. See, also, App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v. Cox (1996),114 Ohio App.3d 41, 60. Moreover, "it is not the duty of this Court to develop an argument in support of an assignment of error if one exists."Untied at ¶ 141, citing Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 18673. Consequently, we may disregard arguments if an appellant fails to identify the relevant portions of the record upon which he bases his argument. See App.R. 12(A)(2); Loc.R. 7(E).
 {¶ 13} The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution mirrors this provision. For the protections of the *Page 4 Fourth Amendment to apply, however, an individual must have a "legitimate expectation of privacy in the invaded place." Minnesota v. Olson (1990),495 U.S. 91, 95, quoting Rakas v. Illinois (1978), 439 U.S. 128, 143. The Fourth Amendment protects against unreasonable intrusions into an area in which the person attempting to invoke the Fourth Amendment protection has an actual subjective expectation of privacy that, when viewed objectively, is justifiable under the circumstances of the case.Akron v. Callaway, 162 Ohio App.3d 781, 2005-Ohio-4095, at ¶ 15. "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." (Internal quotations omitted.) Olson, 495 U.S. at 95-96, quoting Katz v. United States
(1967), 389 U.S. 347, 361 (Harlan, J., concurring).
 {¶ 14} In his brief, Gulley states that he had an expectation of privacy in the enclosed porch that he ran into on May 17, 2005, but he provides no support for this statement. He merely argues that the police knew that he was transitory, and therefore, had no way of knowing whether or not he lived at the home in question prior to following him inside its enclosed porch. However, this argument has no bearing on whether Gulley himself had a legitimate expectation of privacy in the Walker home. See Callaway at ¶ 15. Regardless of the officers' knowledge in this instance, Gulley has the burden of proving that he had a recognizable privacy interest entitling him to Fourth Amendment protection.
 {¶ 15} Thomas Walker, the owner of the house and enclosed porch onto which Gulley ran, did not testify at trial. Rather, his daughter, Danielle Walters, testified that Gulley often frequented the house. Yet, Danielle also testified that approximately ten to twelve different individuals came in and out of the house each day without any apparent restriction. She testified, in relevant part:
 {¶ 16} "Q: Tell me about the foot traffic through that house. What's it usually like? * * *
 {¶ 17} "A: About 10 or 12 different people a day.
 {¶ 18} "Q: What? Came through the house?
 {¶ 19} "A: Yeah.
 {¶ 20} "Q: Just came in the back, left through the front, vice versa?
 {¶ 21} "A: Yes, or sit down for a while.
 {¶ 22} "Q: Ten or twelve a day?
 {¶ 23} "A: Uh-huh."
 {¶ 24} From Danielle's testimony, it would appear that the Walkers allowed any number of individuals into their home at any given time whether they were there or not.
 {¶ 25} There is no indication that Thomas Walker gave Gulley permission to enter his home or that either of the Walkers even knew when Gulley came to *Page 5 
the house. In fact, Danielle was not even home when Gulley ran to the house to evade Officer Overdorf. Gulley ran straight into the enclosed and unlocked porch. Additionally, Gulley makes no attempt to distinguish his privacy expectation in the Walker home from the privacy expectations of the other ten to twelve different individuals who came into the home each day. Although social guests enjoy Fourth Amendment protection in certain instances, privacy does not attach per se upon a person's blanket assertion that they are a guest in another's home. SeeOlson, 495 U.S. at 98-99 (explaining that an overnight guest may have an expectation of privacy if their expectation is legitimate and consistent with "longstanding social custom"). Gulley fails to set forth any evidence beyond this blanket assertion.
 {¶ 26} We find that Gulley has not shown that he possessed the type of legitimate and reasonable privacy interest in the Walker home that society is prepared to recognize. Indeed, our review of the record leads us to question the legitimacy of Gulley's spontaneous trips to the Walker house. While we decline to speculate as to the situation at the Walker home and the many different individuals who frequent it, we note that the purpose for which an owner maintains or a visitor uses an invaded place may affect the reasonableness of a privacy expectation in the invaded place. See AL Post 763 v. Ohio Liquor Contro l Comm. (1998),82 Ohio St.3d 108, 115 (noting that privacy expectations are significantly decreased when a home is used to conduct illegal transactions). Because Gulley has failed to show that he possessed a legitimate expectation of privacy in the Walker's enclosed porch, he has no standing to argue that Officer Overdorf violated the Fourth Amendment by entering the residence without a warrant or permission. SeeOlson, 495 U.S. at 96. Accordingly, Gulley's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II {¶ 27} "THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE COURT'S ISSUANCE OF THE FLIGHT INSTRUCTION."
 {¶ 28} In his second assignment of error, Gulley argues that the trial court improperly instructed the jury. We do not reach the merits of Gulley's argument because we find that he failed to properly preserve the issue for appeal.
 {¶ 29} "[A] motion in limine does not preserve the record on appeal[;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection * * * when the issue is actually reached during the trial." (Emphasis omitted.)State v. Grubb (1986), 28 Ohio St.3d 199, 203, citing State v.White (1982), 6 Ohio App.3d 1. The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. Yet, even in the event of a forfeited objection, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim.R. 52(B). The party claiming error has the burden of arguing plain error on appeal. See State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, at ¶ 17. *Page 6 
 {¶ 30} As Gulley failed to raise any contemporaneous objection to the trial court's flight instruction to the jury, he is precluded from raising this argument for the first time on appeal. Furthermore, as Gulley fails to argue that the trial court committed plain error in instructing the jury, we decline to address the issue. Gulley's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III {¶ 31} "THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN ISSUING ITS INSTRUCTION ON CONSTRUCTIVE POSSESSION."
 {¶ 32} In his third assignment of error, Gulley argues that his conviction was against the manifest weight of the evidence and that trial court's instruction to the jury on constructive possession was improper.
 {¶ 33} App.R. 16(A)(7) provides that an appellant's brief must include, "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." In his last assignment of error, Gulley combines his manifest weight argument with his erroneous instruction argument rather than addressing each separately in a distinct assignment of error. Furthermore, his extremely brief manifest weight argument does not contain a single citation to record. Despite these deficiencies, however, we have reviewed the record and have determined that neither of Gulley's arguments have merit.
 {¶ 34} As to the trial court's instruction on constructive possession, the record reflects that Gulley failed to object to the instruction at trial. As he did not argue that it was plain error for the trial court to introduce the instruction, we decline to address this issue for the first time on appeal. See Payne at ¶ 17.
 {¶ 35} As to his manifest weight argument, Gulley argues that the jury lost its way in convicting him solely on the basis of circumstantial evidence. When considering a manifest weight argument, this Court:
 {¶ 36} "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 37} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the *Page 7 
exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also,Otten, 33 Ohio App.3d at 340.
 {¶ 38} R.C. 2925.11(A) provides that, "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Possession may be actual or constructive." State v. Cenker, 5th Dist. No. 2006-CA-044,2007-Ohio-921, at ¶ 47. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession."State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Furthermore, ownership need not be proven to establish constructive possession.Cenker at ¶ 47, citing State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13. Circumstantial evidence is sufficient to support the elements of constructive possession. Id. at ¶ 48, citing State v.Jenks (1991), 61 Ohio St.3d 259, 272-73. Consequently, even if the jury based its decision on circumstantial, rather than direct evidence, that fact alone does not render Gulley's conviction against the weight of the evidence.
 {¶ 39} Moreover, we cannot say based on our review of the record that the jury lost its way in convicting Gulley. Officers discovered Gulley in a high drug and crime area, sitting in the car of a well known drug offender. After chasing him, Officer Overdorf found two bags of crack cocaine in the trash can in which Gulley had inserted his hands. Furthermore, jurors were able to hear Gulley's own statements, including: (1) "[I have] shoes that cost more than the 43 grams that [I] was caught with;" (2) "[I won't] be caught in Canton again * * * [I] was just doing Victwan a favor;" (3) "[I] only deal with people in Miami and California now;" and (4) "[I] only deal in large amounts." Based on the evidence at trial, we find that Gulley's conviction was not against the manifest weight of the evidence. Gulley's third assignment of error lacks merit.
 III. {¶ 40} Gulley's assignments of error are overruled. The judgment of the Stark County Court of Common Pleas is affirmed.
 {¶ 41} Judgment affirmed.
 {¶ 42} The Court finds that there were reasonable grounds for this appeal.
 {¶ 43} We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Stark, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
 {¶ 44} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of *Page 8 
this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 {¶ 45} Costs taxed to appellant.
 Slaby, P. J., Moore, J., concur. *Page 1