DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Omar McCoy ("McCoy"), appeals the judgment of the Lorain County Court of Common Pleas which found him guilty of multiple charges involving the possession and trafficking of drugs and the possession of drug paraphernalia. This Court affirms.
 I. {¶ 2} On August 30, 2005, McCoy was arrested in Lorain, Ohio by members of the U.S. Marshals Violent Fugitive Task Force. McCoy was indicted on September 28, 2005, on eight (8) separate counts which included two (2) forfeiture specifications. On October 5, 2005, McCoy entered a plea of not guilty. On April 14, 2006, McCoy filed a motion to suppress the evidence seized in conjunction with his arrest. After a suppression hearing and briefing by the parties as to the merits of the motion to suppress, the trial court denied McCoy's motion to suppress. On October 22, 2007, McCoy signed a plea agreement and entered a plea of no contest to the charges contained in the amended indictment which include (as identified in the plea *Page 2 
agreement): possession of cocaine in violation of R.C. 2925.11(A)(1); possession of cocaine in violation of R.C. 2925.11(C)(4)(E); possession of marijuana in violation of R.C. 2925.11(C)(3)(D); possession of drug abuse paraphernalia in violation of R.C. 2925.14(C)(1); trafficking in cocaine in violation of R.C. 2925.03(C)(4)(D); trafficking in cocaine in violation of R.C. 2925.03(C)(4)(F); and trafficking in marijuana in violation of R.C. 2925.03(C)(3)(E). Also included were separate forfeiture specifications in conjunction with the two counts of trafficking in cocaine. On the same day, the trial court accepted the plea and found him guilty of the charges in the amended complaint. On January 22, 2008, the trial court sentenced McCoy to a total of nine (9) years and thirty (30) days, 5 years of mandatory post release control, a fine of $250, and ordered the forfeiture of the $13,721 that was confiscated the day of his arrest. McCoy filed a timely appeal setting forth one assignment of error.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE. THE ENTRY INTO AND SEARCH OF THE RESIDENCE AND THE SEIZURE OF EVIDENCE VIOLATED THE DEFENDANT'S RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 3} McCoy argues that the trial court erred in denying his motion to suppress because the evidence seized was discovered only after an unlawful entry and search of the house where he was arrested. On the threshold issue of standing, McCoy argues that he had a legitimate expectation of privacy in the house because he was an overnight guest of the lessee of the premises. In addition, McCoy argues that the initial entry into the house by police was unlawful because there were no exigent circumstances that permitted the police to enter the residence *Page 3 
without a warrant. Likewise, McCoy also argues that the arrest warrant possessed by the marshals for a different person did not authorize their entry into 1114 W. 18th Street. Accordingly, McCoy argues that the evidence gathered as a result of the alleged unlawful entry and search should be suppressed, and, in turn, his conviction should be reversed. This Court disagrees.
 {¶ 4} "An appellate court's standard of review with respect to a motion to suppress is de novo." Akron v. Holmes, 9th Dist. No. 21590,2004-Ohio-832, at ¶ 10. The appellate court is to give due weight to the inferences drawn by the trial court from the facts of the case, and is only to review those facts for clear error. State v. Bing (1999),134 Ohio App.3d 444, 448, citing Ornelas v. United States (1996),517 U.S. 690, 699. Accordingly, the appellate court is to "accept the factual determinations of the trial court if they are supported by competent, credible evidence, and without deference to the trial court's conclusions will determine `whether, as a matter of law, the facts meet the appropriate legal standard.'" State v. Nichols (Apr. 24, 2002), 9th Dist. No. 01CA0037, quoting State v. Curry (1994), 95 Ohio App.3d 93,96.
 {¶ 5} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures." State v.Moore, 2d Dist. No. 20198, 2004-Ohio-3783, at ¶ 10. "It is a `basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. NewYork (1980), 445 U.S. 573, 586.
 {¶ 6} The United States Supreme Court has found that the "capacity to claim the protection of the Fourth Amendment depends * * * upon whether the person who claims the *Page 4 
protection of the Amendment has a legitimate expectation of privacy in the invaded place."[1] Minnesota v. Olson (1990), 495 U.S. 91, 95. (Internal citations omitted). Such an expectation is legitimate only if it is one that society is prepared to recognize as reasonable. Id. at 95-96. Furthermore, "[t]he burden is upon the defendant to prove facts sufficient to establish such an expectation." State v. Williams (1995),73 Ohio St.3d 153, 166, citing Rakas v. Illinois (1978), 439 U.S. 128,131.
 {¶ 7} However, an individual need not be the owner or possessor of the premises entered to have standing to claim a Fourth Amendment violation after a warrantless entry. Moore at ¶ 10. The United States Supreme Court has recognized that an individual who is an overnight guest may have a legitimate expectation of privacy in the home in which he is visiting. State v. Draper, 6th Dist. No. F-04-026, 2005-Ohio-920, at ¶ 10, citing Olson, 495 U.S. at 96-97. However, a guest who is merely present with the consent of the householder does not necessarily enjoy the same expectation of privacy. Minnesota v. Carter (1998),525 U.S. 83, 90; State v. Caldwell (Feb. 26, 1999), 2d Dist. No. 17175.
 {¶ 8} Moreover, "the purpose for which an owner maintains or a visitor uses an invaded place may affect the reasonableness of a privacy expectation in the invaded place." State v. Gulley, 5th Dist. No. 2006CA00114, 2008-Ohio-887, at ¶ 26. In addition, it has long been recognized that when an individual converts his home into a "commercial center used to conduct illegal transactions," the expectation of privacy in the premises is significantly reduced. AL Post *Page 5 763 v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 108, 115, citingLewis v. United States (1966), 385 U.S. 206, 211.
 {¶ 9} In the case at hand, the house in question was not furnished for everyday living. The contents of the house consisted of a video game system, a television, a couch, and a mattress lying on the floor with no sheets or pillows. There were no beds, no toiletries in the bathroom, no clothing in the bedrooms, no table in the kitchen, and no food in the refrigerator. In contrast, there were large quantities of marijuana and cocaine, and paraphernalia commonly used in the packaging, distribution, and consumption of marijuana and cocaine.
 {¶ 10} It is obvious from the evidence that the house at 1114 W. 18th Street was a place for storing and trafficking drugs, and not a traditional place of residence. When asked to describe the inside of the house in question, one of the arresting police officers stated: "It appeared to be a place where they were bringing in marijuana, cocaine, [and] they were repackaging it for distribution." The nature of the house had been so converted by the lessee that it had lost its character as a residential dwelling and with it the heightened protection inherent in such property. Furthermore, McCoy presented no testimony or evidence outside of his own assertions that showed he actually had the permission required to receive protection as an "overnight guest". SeeGulley at ¶ 25 ("Although social guests enjoy Fourth Amendment protection in certain instances, privacy does not attach per se upon a person's blanket assertion that [he is] a guest in another's home.").
 {¶ 11} McCoy has failed to show that his expectation of privacy as a visitor in a house used for trafficking illegal substances was the kind of privacy expectation "that society is prepared to recognize as reasonable." See State v. Glover, 2d Dist. No. 20692, 2005-Ohio-4509, at ¶ 9; Olson, 495 U.S. at 95-96. Because McCoy did not possess a legitimate expectation of *Page 6 
privacy, he had no standing to challenge the sufficiency of the entry and search of the premises where he was arrested. Accordingly, the trial court properly denied his motion to suppress. McCoy's sole assignment of error is overruled.
 III. {¶ 12} McCoy's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, J. MOORE, J. CONCUR
[1] The Supreme Court of Ohio has adopted this rule of law and generically refers to an individual's "legitimate expectation of privacy" as having "standing" to bring such an action. SeeWilliams, 73 Ohio St.3d at 166. ("The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable."). *Page 1