[Cite as *State v. Dennis*, 2018-Ohio-2495.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28593 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| BRIAN DENNIS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 06 1690 |

DECISION AND JOURNAL ENTRY

Dated: June 27, 2018

CARR, Judge.

{¶1} Defendant-Appellant Brian Dennis appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On June 22, 2013, police located a vehicle that had been reported stolen at a residence in Akron. The resident of the home informed police that the person they were looking for was in the back. Police found Dennis in a back bedroom. When Dennis was arrested, police found a loaded .45 caliber handgun on the bed where Dennis had been seated. Upon searching Dennis, police found a substance that was determined to be cocaine in his pocket, and, upon searching the vehicle, police found a substance determined to be heroin and a scale.

{¶3} Dennis was indicted on one count of possession of heroin, one count of possession of cocaine, one count of having weapons while under disability, and one count of receiving stolen property. Dennis filed a motion to suppress and a hearing was held. The trial

court denied the motion in a brief entry. The matter proceeded to a jury trial. The jury found Dennis not guilty of receiving stolen property but guilty of the remainder of the charges. The trial court sentenced Dennis to an aggregate term of three years.

{¶4} Dennis appealed and this Court reversed the trial court's decision concluding that the trial court's failure to make findings of fact with respect to its ruling on the motion to suppress hindered our review. *State v. Dennis*, 9th Dist. Summit No. 27692, 2016-Ohio-8136, ¶ 6. We therefore remanded the matter for the trial court to set forth factual findings with respect to its ruling on the motion to suppress. *Id*. Upon remand the trial court issued an entry ruling on the motion to suppress that included factual findings. Dennis has again appealed, raising two assignments of error for our review.

II.

## **ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶5} Dennis argues in his first assignment of error that the trial court erred in denying his motion to suppress. Specifically, he asserts that the trial court erred in determining that Dennis did not have standing to file a motion to suppress and in concluding that the officer received consent to enter the residence. Because we conclude the trial court did not err in concluding that Dennis did not possess an expectation of privacy in the premises, we need not address the issue of consent.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio

St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶7}    "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures." *State v. Hoang,* 9th Dist. Medina No. 11CA0013-M, 2012-Ohio-3741, ¶ 39, quoting *State v. Moore*, 2d Dist. Montgomery No. 20198, 2004-Ohio-3783, ¶ 10. "The United States Supreme Court has found that the 'capacity to claim the protection of the Fourth Amendment depends * * * upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" *Hoang* at ¶ 39, quoting *Minnesota v. Olson*, 495 U.S. 91, 95 (1990). "The Supreme Court of Ohio has adopted this rule of law and generically refers to an individual's 'legitimate expectation of privacy' as having 'standing' to bring such an action." *Hoang* at ¶ 39, fn. 1, citing *State v. Williams*, 73 Ohio St.3d 153, 166 (1995). "Such an expectation is legitimate only if it is one that society is prepared to recognize as reasonable." *Hoang* at ¶ 39. "[T]he burden is upon the defendant to prove facts sufficient to establish such an expectation." *Id.*

{¶8}    "The United States Supreme Court has recognized that an individual who is an overnight guest may have a legitimate expectation of privacy in the home in which he is visiting." *Hoang* at ¶ 40, citing *State v. Draper*, 6th Dist. Fulton No. F-04-026, 2005-Ohio-920, ¶ 10, citing *Olson* at 96-97. "However, a guest who is merely present with the consent of the

householder does not necessarily enjoy the same expectation of privacy." *Hoang* at ¶ 40, citing *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

{¶9} On appeal, Dennis has only argued that the record establishes that he was an overnight guest. Thus, he maintains that he did have a legitimate expectation of privacy in the premises. He has not made any argument that some other status conferred upon him an expectation of privacy in the premises. *See* App.R. 16(A)(7).

{¶10} At the hearing, Officer James Donohue and Dennis testified. Officer Donohue, a patrol officer with the Akron Police Department testified that he was on duty on June 22, 2013 around 1:30 a.m. He received a call from dispatch stating a person had called in to report seeing a stolen vehicle and had followed it to an address on Davis Street. Officer Donohue proceeded to the address and located a vehicle matching the description and license plate number in the driveway of the residence. Officer Donohue and another officer approached the front of the residence and Officer Donohue's partner and another officer approached the rear. Officer Donohue knocked on the door and a woman answered and identified herself as the homeowner. Officer Donohue could not remember if she stated that she lived there with her children but he did testify that she did not give any indication that she lived there with anyone in addition to her children. Officer Donohue asked her about the vehicle, told her it was stolen, and asked if the persons associated with it were in the house. She responded affirmatively and indicated the he was in the back. The resident indicated that Officer Donohue needed to get a warrant and Officer Donohue told her, "Don't get caught up in his mess." At that point, the woman said something like "all right" and let the police inside. After the police entered, the woman started to walk towards the back where Dennis was but Officer Donohue told her that he could not let her back there because Dennis was a suspect in a felony case. The woman complied.

**{¶11}** Officer Donohue proceeded to the back left portion of the house and found Dennis sitting on the bed "looking intently at [his] cell phone[.]" Dennis did not appear to realize that Officer Donohue was there. When Dennis noticed Officer Donohue, Dennis looked "very startled[.]" Officer Donohue ordered Dennis to stand up and put handcuffs on him. Officer Donohue then noticed a loaded .45 caliber handgun where Dennis had been seated.

**{¶12}** Dennis testified that he had been staying at the residence for a week and a half, almost two weeks at the time of his arrest. He indicated he was staying there because he and his girlfriend got into a fight. Dennis testified that he was generally sleeping on the couch at the residence but also slept in the bedroom sometimes. He asserted that he knew the homeowner all of his life and that he "grew up with her." However, when Dennis was asked what the resident's children's names were, Dennis seemed to have difficulty remembering at least one of the children's names.

**{¶13}** On the night in question, Dennis testified that he was sitting in the room with the resident and they were waiting for some friends to come back with beer when they heard the knock at the door. The resident went to answer the door, asked who it was, and Dennis heard her say "[t]he police." At the time, he thought it was their friends joking around because "they w[ere] drunk and stuff." However, when she opened the door, Dennis heard the police radios and Dennis turned down the television to listen. According to Dennis he heard the whole conversation between the police and the resident. He heard the woman tell the police, "please don't come in my house[.]" Then he heard what sounded like arguing, so he pulled out his phone and was about to call his brother and tell him about the car that someone had given him when the officer came around the corner to the bedroom. Dennis did not hear the woman give police permission to enter the house.

{¶14} Dennis acknowledged that he was no longer staying with the woman at the time of the hearing and that he had only spoken to her once since his arrest. Dennis was asked whether he gave the police a different address as his residence and Dennis responded that that was "the old address."

{¶15} The trial court concluded that Dennis lacked standing based in large part on its finding that Dennis' testimony was not credible. The trial court is in the best position to make those credibility determinations. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. In explaining why the trial court found Dennis' testimony not credible the trial court stated the following:

> Defendant testified that he has known the resident for his entire life, yet, he struggled to name her two children with whom he also claimed to be residing for the past one and half to two weeks. Defendant claimed to be upset and in the process of calling his brother after discovering the car someone gave him was stolen, yet, Officer Don[o]hue found Defendant looking "intently" at his cell phone unaware and then startled by Officer Don[o]hue's appearance. Defendant did not go to [the residence] for the purpose of retiring for the night, rather, to celebrate the resident's special occasion with some friends who were expected to be returning from the store with beer. Defendant's testimony failed to rationally explain why he would give police officers an "old address * * *." Upon review, the Court finds Defendant did not have a legitimate expectation of privacy in [the residence], therefore, lacks standing to file a motion to suppress.

{¶16} After reviewing the totality of the evidence in light of Dennis' arguments on appeal, we cannot say the trial court erred in finding that Dennis lacked a legitimate expectation of privacy in the residence and therefore lacked standing to contest the entry into the house. *See Hoang,* 2012-Ohio-3741, at ¶ 39. In sum, the trial court did not believe that Dennis was an overnight guest. The trial court's rationale for finding that Dennis' testimony was not credible and therefore finding that he was not an overnight guest is supported by the record. As noted by the trial court, there were portions of Dennis' testimony that were not logical and were inconsistent with his claim that he had been residing at the residence for almost two weeks and

had known the resident for his entire life. Dennis offered no explanation as to why he would have provided an "old address" to police instead of the address of the premises where he was found. Dennis also had difficulty remembering the name of at least one of the resident's children despite allegedly living there and knowing her for his whole life. Moreover, there was evidence from which one could reasonably infer that Dennis was over the house to party, as opposed to stay the night; Dennis himself averred he and the resident were waiting for the return of their friends, who were already drunk, and were coming back with beer even though it was already 1:30 a.m.

{¶17} In light of Dennis' argument on appeal, which is limited to asserting that Dennis was an overnight guest, we cannot say that the trial court erred in concluding that Dennis lacked a legitimate expectation of privacy in the residence; the trial court's finding that Dennis was not an overnight guest was supported by competent, credible evidence in light of the trial court's credibility determinations. *Burnside* at ¶ 8.

{¶18} Dennis' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ADMITTING, OVER OBJECTION OF TRIAL COUNSEL, THE USE OF AN INCIDENT REPORT TO "REFRESH THE RECOLLECTION" OF A WITNESS WHO DID NOT CREATE THE INCIDENT REPORT.

{¶19} Dennis argues in his second assignment of error that the trial court abused its discretion in admitting certain evidence. Specifically, Dennis alleges that, over objection, the trial court allowed Officer Donohue, during his testimony, to utilize an incident report in violation of Evid.R. 803(5), the hearsay exception for recorded recollection.

{¶20} "The decision to admit or exclude evidence lies in the sound discretion of the trial court." *State v. Haywood*, 9th Dist. Summit No. 28040, 2017-Ohio-8299, ¶ 53. "Absent an issue

of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *Id.*, quoting *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 6. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶21} Evid.R. 803(5) allows for the admission of :

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

"In order to admit a statement as substantive evidence under Evid.R. 803(5), a party must establish through the testimony of the witness that[:] (1) the witness does not have a present recollection of the events in question; (2) the recorded recollection was made at a time when the events were fresh in the witness'[] memory; (3) the recorded recollection was made or adopted by the witness; and (4) the recorded recollection correctly reflects the prior knowledge of the witness." (Internal quotations and citations omitted.) *State v. Martin*, 9th Dist. Summit No. 25438, 2011-Ohio-1213, ¶ 13.

{¶22} The State argues that there was no error because the report was used to refresh Officer Donohue's memory in accordance with Evid.R. 612. "While '[a] party may refresh the recollection of a witness under Evid.R. 612 by showing him or her a prior statement[, ] * * * a party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury.'" *Martin* at ¶ 15, quoting *State v. Ballew*, 76 Ohio St.3d 244, 254 (1996).

{¶23} We note that Dennis has failed to specifically identify the location in the record of the testimony that he challenges on appeal, *see* Loc.R. 7(F), and has also failed to specifically

identify the testimony that he believes was inadmissible. Instead, he has broadly challenged the portions of Officer Donohue's testimony during which he utilized an incident report.

{¶24} From what we can determine from the record, Officer Donohue utilized an incident report during several questions and Dennis objected during several of those questions. First, Officer Donohue was asked the time of the incident. Officer Donohue responded that he could not say for sure without seeing the report. The prosecutor asked if seeing the report would refresh Officer Donohue's recollection and he responded affirmatively. The prosecutor then handed Officer Donohue the report and asked him to look at it and let the prosecutor know when his recollection was refreshed. Officer Donohue then provided the time of the incident.

{¶25} Shortly thereafter, Officer Donohue was asked what the make and model of the vehicle under investigation was. Officer Donohue again asked to see the report and then responded with the make and model of the vehicle.

{¶26} Later in the testimony, Officer Donohue was asked for the serial number of the gun. Officer Donohue noted that it would be in the incident report and asked the prosecutor if he should read the number. The prosecutor responded affirmatively and Officer Donohue read the serial number into the record.

{¶27} Near the end of the direct examination, Officer Donohue was asked what Dennis' date of birth was. Officer Donohue asked if he should read the date of birth and the prosecutor answered affirmatively. Officer Donohue then read the date of birth. Immediately after, the prosecutor asked for Dennis' social security number and Officer Donohue provided it.

{¶28} It appears that, despite the State's argument to the contrary, at least some of Officer Donohue's testimony was not permitted under Evid.R. 612. Officer Donohue read the serial number of the gun, Dennis' date of birth, and, it appears, his social security number into

the record from the incident report. Such is not permitted under Evid.R. 612. *See Martin,* 2011-Ohio-1213, at ¶ 15. There is also an argument that that testimony runs afoul of Evid.R. 803(5) as it is not clear from the record that Officer Donohue made or adopted the report or indicated that the report correctly reflected his prior knowledge. *See Martin* at ¶ 15.

{¶29} Notwithstanding the foregoing, this Court has also held that violations of Evid.R. 803(5) are subject to harmless error analysis. *See id.* at ¶ 13, citing *State v. Moorer*, 9th Dist. Summit No. 24319, 2009-Ohio-1494, ¶ 16-17. Even assuming the testimony was not admissible, Dennis has not explained how the admission of this testimony prejudiced him. We note that all of the challenged testimony was admitted into evidence elsewhere. A forensic expert relayed the serial number of the gun, Dennis himself provided his birth date and social security number during his police interview that was played for the jury, and another officer testified about the time of the incident and the make and model of the vehicle at issue. Moreover, during Dennis' police interview, he acknowledged that the gun and drugs were his and admitted to having a prior conviction for aggravated robbery. Given the foregoing, we can only conclude that any error in the admission of the challenged testimony was harmless. *See Martin* at ¶ 13.

{¶30} Dennis' second assignment of error is overruled.

III.

{¶31} Dennis' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.