[Cite as *State v. Gervin*, 2016-Ohio-5670.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 9-15-51

    v.

GREGORY GERVIN AKA            O P I N I O N
ROBERT GERVIN,

    DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 15-CR-225

**Judgment Affirmed**

**Date of Decision:** September 6, 2016


**APPEARANCES:**

    *Robert C. Nemo* for Appellant

    *Kevin P. Collins* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Gregory Gervin aka Robert L. Gervin ("Gervin"), appeals the December 1, 2015 judgment entry of the Marion County Court of Common Pleas journalizing his conviction by a jury for one count of possession of cocaine and one count of possession of heroin and sentencing him to serve twelve months in prison on each count to be served concurrently.

{¶2} On June 4, 2015, the Marion County Grand Jury returned a two-count indictment against Gervin alleging Count One, Possession of Cocaine, in violation of R.C. 2925.11(A),(C)(4), a felony of the fifth degree, and Count Two, Possession of Heroin, in violation of R.C. 2925.11(A),(C)(6), a felony of the fourth degree. The charges stemmed from the execution of a search warrant at an apartment in Marion, Ohio, where law enforcement encountered Gervin, ordered him to the ground, and determined him to be in possession of a white plastic baggy containing smaller bags of cocaine and heroin.

{¶3} Upon arraignment, Gervin pled not guilty to the charges. Gervin subsequently filed a motion to suppress arguing that the search warrant was (1) not properly executed due to a failure of service on the lessee Sabreena Brown, (2) not supported by probable cause, and (3) did not specify the property to be seized.

{¶4} On August 13, 2015, the trial court held a hearing on Gervin's motion to suppress where the State presented the testimony of law enforcement officers

involved in the execution of the search warrant and where the search warrant, the affidavit supporting the search warrant, and the return on the search warrant were admitted into evidence by stipulation.

**{¶5}** On August 14, 2015, the trial court issued a judgment entry overruling the motion to suppress on the grounds raised.

**{¶6}** On October 22, 2015, the case proceeded to a jury trial. Before trial, the prosecution moved to amend Count Two of the indictment to remove the language referring to the amount of heroin as exceeding one gram. The amendment would reduce the level of the offense alleged to a fifth degree felony. The trial court granted the State's motion and the indictment was so amended.

**{¶7}** At trial, the prosecution presented the testimony of the law enforcement officers involved in obtaining and executing the search warrant and in the discovery of the drugs on or about Gervin's person. The prosecution also presented the testimony of the Marion Police Department property officer to establish the complete chain of custody of the narcotics obtained during the execution of the search warrant as well as the testimony of the forensic scientist at the Bureau of Criminal Investigation, who tested the chemical make-up of the drugs and identified the substances as cocaine and heroin. Several exhibits were also admitted into evidence, including photographs taken by law enforcement at the scene which

depicted the location where the drugs were found and Gervin's location in the apartment at the time of his arrest.

{¶8} The defense rested after the presentation of the State's case and moved for acquittal on the basis of Crim.R. 29, which was overruled by the trial court. After deliberation, the jury returned guilty verdicts on both counts.

{¶9} On December 1, 2015, the trial court sentenced Gervin to twelve months in prison on each count to be served concurrently for a total stated prison term of twelve months.

{¶10} Gervin subsequently filed this appeal, asserting the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.**

### ASSIGNMENT OF ERROR NO. II

**THE JURY'S FINDING OF GUILTY ON BOTH COUNTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE STATE PRESENTED INSUFFICIENT EVIDENCE TO PROVE THE ESSENTIAL ELEMENTS OF POSSESSION.**

*First Assignment of Error*

{¶11} In his first assignment of error, Gervin claims he received ineffective assistance of counsel based upon his trial counsel's alleged failure to raise certain arguments pertaining to the search warrant and its execution in a motion to suppress.

Specifically, Gervin claims his trial counsel was ineffective for (1) failing to argue that the search warrant was not dated, (2) failing to argue that the judge issuing the search warrant did not have authority to do so, and (3) failing to seek suppression of the drugs on the grounds that upon executing the search warrant there was no consensual entry and/or a failure of law enforcement to comply with the "knock and announce" rule upon entering the premises.

*Standard of Review*

{¶12} To establish his claims on appeal, Gervin must show that trial counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶13} In order to show trial counsel's performance was deficient, appellant must prove that counsel's performance fell below an objective standard of reasonable representation. *Jackson* at ¶ 133. The appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of

reasonable professional assistance. *Strickland* at 689. With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

*Alleged Search Warrant Defect*

{¶14} Gervin first argues that his trial counsel was ineffective for failing to argue in a motion to suppress that the search warrant was not dated. Gervin claims that this alleged defect invokes the exclusionary rule and compels suppression of the drugs obtained by law enforcement. Gervin directs our attention to R.C. 2933.25. This statute provides an example to which warrants are expected to substantially conform. Included in the example form is the signature of the issuing judge and the date signed.

{¶15} Here, the search warrant contains the signature of the issuing judge, but does not indicate the date. However, the affidavit of Lieutenant Chris Adkins supporting the search warrant contained both the signature of the issuing judge as notary and the date signed. Notably, the affidavit supporting the search warrant

indicates that the issuing judge notarized the affidavit on June 1, 2015 at 12:06 a.m. At the suppression hearing, Lt. Adkins corroborated this timeline by testifying that on June 1, 2015, he met the judge at the police department "in the middle of the night" to obtain his signature on the search warrant and supporting affidavit. (Supp. Hrg. Aug. 13, 2015 at 20). Lt. Adkins further testified that the search warrant was executed at the apartment where Gervin was located at approximately 12:40 a.m. on June 1, 2015, shortly after the issuing judge signed the affidavit and the search warrant. (Id. at 24).

{¶16} Gervin has not provided us with any authority to support his position that the signed, undated search warrant in this case accompanied by a dated affidavit, also bearing the issuing judge's signature as notary, and supported by testimony from the affiant officer establishing the date the search warrant was signed somehow invalidates the search warrant and invokes the exclusionary rule. To the contrary, "clerical errors, inadvertently made without prejudice to the defendant, will not invalidate an otherwise valid search warrant.") *See State v. Harrington*, 10th Dist. Franklin No. 14AP-571, 2015-Ohio-2492, ¶ 10, quoting *State v. Honzu*, 10th Dist. Franklin No. 94APA07-1011 (June 1, 1995); *see also State v. Batain*, 8th Dist. Cuyahoga No. 91502, 2009-Ohio-2582, ¶¶ 26-27; *State v. Dunn*, 3d Dist. Marion No. 9-89-27, *10 (November 20, 1991). Accordingly, we

find no merit in Gervin's argument that his trial counsel was ineffective for failing to raise the issue of the undated search warrant during the trial court proceedings.

*Authority of the Issuing Judge*

**{¶17}** Gervin also claims that his trial counsel was ineffective for failing to argue that the drugs obtained during the execution of the search warrant were subject to suppression because the issuing judge did not have the authority to hear evidence and issue search warrants in criminal matters. Gervin relies on *State v. Brown*, in which the Supreme Court of Ohio held "that unless appointed by the chief justice pursuant to Article IV, Section 5(A)(3) of the Ohio Constitution, a probate judge does not have the authority to issue search warrants in criminal matters.[1]" 142 Ohio St.3d 92, 2015-Ohio-486, ¶ 10. The record reveals the judge issuing the search warrant in this case was not exclusively a probate judge, but rather was a judge of the Marion County Court of Common Pleas, Family Division. Pursuant to R.C. 2301.03(Z) a judge holding this position "shall have the same qualifications, *exercise the same powers and jurisdiction*, and receive the same compensation *as the other judges of the court of common pleas of Marion County* and shall be elected

---

[1] In reaching this conclusion, the Supreme Court analyzed the relevant authority on the subject including R.C. 2933.21, which states, "A judge of a court of record may, within his jurisdiction, issue warrants to search a house or place * * *;" Crim.R. 41(A)(1) which states, "A search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction;" and R.C. 2931.01 which provides, "As used in Chapters 2931 to 2953 of the Revised Code: * * * (B) 'Judge' does not include the probate judge [and] (C) 'Court' does not include the probate court." The Supreme Court in *Brown* further recognized an exception to the statute in cases where the chief justice, pursuant to Article IV, Section 5(A)(3) of the Ohio Constitution, assigns a probate judge to temporarily sit or hold court on any other division of a court of common pleas. *State v. Cotton*, 56 Ohio St.2d 8, 12–13 (1978).

and designated as judge of the court of common pleas, domestic relations-juvenile-probate division." (Emphasis added). This authority necessarily includes the power and jurisdiction to hear evidence and issue search warrants in criminal matters.

{¶18} Even assuming, *arguendo*, that the issuing judge in this case did not have the authority to issue the search warrant, Gervin overlooks the fact that the Supreme Court in *Brown* also held that the good-faith exception to the exclusionary rule set forth in *State v. Leon* applies in these cases. *Brown* at ¶¶ 11-12, citing *State v. Leon*, 468 U.S. 897 (determining that the exclusionary rule should not be applied to bar evidence obtained by officers acting in reasonable good-faith reliance on a search warrant issued by a detached and neutral magistrate that is ultimately found to be unlawful). Based on the foregoing, we do not find that Gervin established his trial counsel was ineffective for failing to raise an argument relating to the judge's authority to issue a search warrant in this case.

*Nonconsensual Entry and/or Violation of*
*Knock and Announce Rule*

{¶19} In his final argument under this assignment of error, Gervin contends that his trial counsel was ineffective in failing to elicit testimony from law enforcement officers to determine whether they complied with R.C. 2935.12—Ohio's knock-and-announce rule—when executing the search warrant. Section 2935.12(A) of the Revised Code provides:

> **[W]hen executing a search warrant, the peace officer, law enforcement officer, or other authorized individual * * * executing the warrant * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to * * * execute the warrant or summons, he is refused admittance * * *.**

"Exceptions exist, but the rule directs police officers executing a search warrant at a residence to first knock on the door, announce their purpose, and identify themselves before they forcibly enter the home." *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, ¶ 9, citing *Wilson v. Arkansas*, 514 U.S. 927, 935-36 (1995).

{¶20} At the outset we note that the affidavit outlines a significant pattern and context of violence leading to probable cause for this search and a concern for stopping the destruction and/or removal of evidence—both of which have constituted exceptions to the "knock and announce" rule. *State v. Gilbert*, 4th Dist. No. 06CA3055, 2007-Ohio-2717, ¶ 24, quoting *Wilson*, supra, at 936 (noting that "the knock and announce requirement has certain recognized exceptions that include the existence of exigent circumstances, which may include an officer's fear for his physical safety or an officer's reasonable belief that "evidence would likely be destroyed if advance notice were given' "); *see also*, R.C. 2935.12; R.C. 2933.231(C) (Ohio's knock and announce statute provides for judicial waiver of the knock and announce requirement if officer safety is a concern, or if such an exigency arises at the time of execution of the warrant, the officers may dispense with the knock and announce procedures.).

{¶21} In the case sub judice, very little evidence was presented at trial as to the manner and mode of entry in the execution of the search warrant. In fact, the only evidence presented on this issue was the testimony of Deputy Colin Lowe who testified to the following at trial:

> **Deputy Lowe: We merged the SRT team (Marion Police Department Special Response Team) and the (sheriff's office) counterassault team together. We decided to use a ballistic shield for the stairway. We approached the residence, and that's when we knocked at the door yelling, you know, sheriff's office, search warrant, and that's when entry was made.**
>
> **Prosecutor: And how did you make entry?**
>
> **Deputy Lowe: Using a ram, battering ram.**
>
> **Prosecutor: And then what do you do?**
>
> **Deputy Lowe: Went upstairs. We used—like I said, we used a ballistic shield to go up the stairs. There was one guy with the shield, the way we did it, up inside the stairway, you know. That way we at least have some cover, and basically made entry up the stairway.**

(Trial Oct. 22, 2016 at 139).

{¶22} On appeal, Gervin maintains his trial counsel was ineffective for failing to elicit testimony regarding whether law enforcement was "refused admittance." *See* R.C. 2935.12. Gervin's argument seems to be that, had his trial counsel pursued this argument in the motion to suppress, his trial counsel would have learned that the police violated Gervin's Fourth Amendment rights by failing to follow the knock-and-announce rule. It is not clear from the record that a motion

to suppress based on this aspect of improper execution of the search warrant would have had a reasonable probability of success. Although the trial transcript permits an inference that the law enforcement teams entered the residence after knocking and announcing their presence, but without being refused admittance, there is no definitive evidence that this is what occurred.

**{¶23}** In this case, "this Court has no way of knowing what testimony might [have been] elicited" on this issue at a suppression hearing. *State v. Mitchell*, 9th Dist. No. 24730, 2009-Ohio-6950, at ¶ 20. The record developed at trial is generally inadequate to determine the validity of a suppression argument on appeal. *State v. Siders*, 4th Dist. Gallia No. 07CA10, 2008-Ohio-2712, at ¶ 11 (quoting *State v. Culbertson*, 5th Dist. Stark No. 2000CA00129, *4 (Nov. 13, 2000)). "[If] the record is not clear or lacks sufficient evidence to determine whether [there is a reasonable probability that] a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established." *State v. Parkinson*, 5th Dist. Stark No. 1995CA00208, *3 (May 20, 1996). Thus, the record lacks sufficient evidence to permit this Court to determine the validity of Gervin's suppression argument and therefore he has not shown that his trial counsel's performance was deficient or that the result would have been different if his trial counsel would have pursued this particular argument in the suppression motion before trial.[2]

---

[2] In *Hudson v. Michigan*, 547 U.S. 586 (2006), the United States Supreme Court concluded that even if the police violate the knock-and-announce rule before executing a search warrant, the Fourth Amendment does

{¶24} For all of the foregoing reasons, no reasonable probability exists that the motion to suppress based upon the arguments asserted by Gervin on appeal would have been successful. In light of this determination, trial counsel's decision not to file a motion to suppress on these specific grounds did not constitute ineffective assistance of counsel, and the first assignment of error is overruled.

*Second Assignment of Error*

{¶25} In his second assignment of error, Gervin argues that his convictions for possession of cocaine and for possession of heroin are not supported by sufficient evidence and are against the manifest weight of the evidence. Specifically, Gervin claims that the prosecution failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine and heroin found during the execution of the search warrant.

---

not necessarily require the suppression of all evidence found in the ensuing search. Furthermore, several appellate districts, following *Hudson*, have concluded that the exclusionary rule does not apply to violations of the knock-and-announce rule. *See e.g., State v. Macke III*, 12th Dist. Clinton No. CA2007-08-033, 2008-Ohio-1888, ¶ 29-31; *State v. Lam*, 2d Dist. Montgomery No. 21787, 2007-Ohio-5664, ¶ 8; *State v. Gilbert*, 4th Dist. Scioto No. 06CA3055, 2007-Ohio-2717, ¶ 39; *State v. Marcum*, 7th Dist. Columbiana No. 04 CO 66, 2006-Ohio-7068, ¶ 15. The issue was presented to the Supreme Court of Ohio in *State v. Oliver*, but not decided. Instead, the court remanded the case to the trial court for reconsideration in light of *Hudson*. *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, ¶ 13. Notably, the Supreme Court of Ohio has recently accepted jurisdiction to review the proposition, "The exclusionary rule is the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of R.C. 2935.12." *State v. Bembry*, 7th Dist. Mahoning Nos. 2014 MA 51, 2014 MA 52; 2015-Ohio-5598, appeal allowed by *State v. Bembry*, 145 Ohio St. 3d 1470, 2016-Ohio-3028.

*Standard of Review*

**{¶26}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶27}** In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387.

**{¶28}** In this case, Gervin was convicted of possession of cocaine in violation of R.C. 2925.11(A),(C)(4), which states

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**

-14-

\* \* \*

**(C) Whoever violates division (A) of this section is guilty of one of the following:**

\* \* \*

**(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine**.

Gervin was also convicted of possession of heroin in violation of R.C. 2925.11(A),(C)(6), which states

**(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**

\* \* \*

**(C) Whoever violates division (A) of this section is guilty of one of the following:**

\* \* \*

**(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin.**

{¶29} It is undisputed that the substances recovered from the apartment were identified as cocaine and heroin. The only remaining question focused on whether the elements of possession were established at trial. A person acts knowingly "when the person is aware that the person's conduct will probably cause a certain result or

will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist * * *." R.C. 2901.22(B).

{¶30} Under Ohio law, "a person may knowingly possess a substance or object through either actual or constructive possession." *State v. Hilton*, 9th Dist. Summit No. 21624, 2004–Ohio–1418, ¶ 16, citing *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist.1991). A person has actual possession of a substance or object "when it is within his immediate physical control." *State v. Coffman*, 5th Dist. Delaware No. 07 CA A 08 0042, 2008-Ohio-2163, ¶ 25, citing *State v. Messer*, 107 Ohio App.3d 51, 56 (9th Dist.1995). By contrast, "[c]onstructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.

{¶31} In addition to the evidence presented at trial establishing the chain of custody of the drugs retrieved from the apartment after the execution of the search warrant and scientifically identifying the substances as cocaine and heroin, the State presented the following testimony from Deputy Lowe regarding Gervin's possession of the drugs.

> **Deputy Lowe: I get to the top of the landing. There's a stairway and then there's a landing. There's a half wall to your left. I yelled and I immediately looked to my left and that's when I observed Sabrina Brown [sic] and Mr. Gervin. I focused my attention directly to Mr. Gervin at that time.**

\* \* \*

**Prosecutor:** (Pointing to photographs) **Where was the Defendant? Can you tell me there? Obviously he's gone at this point; is that correct?**

**Deputy Lowe: Yes. He was laying right this way alongside the couch.**

**Prosecutor: Okay. Was his—where was [sic] his arms?**

**Deputy Lowe: Where that is open right there (pointing to photograph) is where his left hand ended up. You can see where that's open, and right here was where his right hand was.**

**Prosecutor: All right. I want to take you through this. When you come in, are you ordering him anything at that point?**

**Deputy Lowe: Yes. At that point I'm strictly watching his hands. I'm ordering him to the ground; get on the ground, get on the ground. I wait. It's safer for everybody in there including the Defendant.**

**Prosecutor: And did he comply?**

**Deputy Lowe: Yes. He was compliant.**

**Prosecutor: Was he already laying down?**

**Deputy Lowe: He was in the process of laying down.**

**Prosecutor: And did you notice something?**

**Deputy Lowe: Yes. I noticed a white plastic baggy.**

**Prosecutor: And where was it?**

**Deputy Lowe: Underneath his right hand.**

**Prosecutor: His right hand was on top of it?**

**Deputy Lowe:** Yes.

\* \* \*

**Prosecutor:** And when you first saw it, tell me what you saw.

**Deputy Lowe:** When I first come in, the stairs are right here (pointing to photograph). I come in here. That's where I first see him. I make my way right here. That's when I'm ordering him to the ground, you know. He's complying at this point, you know, in the process of lying down.

The first things that go down is [sic] his hands. When his hands go to the ground, that's when I saw part of the white baggy sticking out from underneath his hand. From that point is when I go over to him. Obviously his hand's off it at that point. I go over and I put him in handcuffs and that was it.

**Prosecutor:** Did you see anything on the ground prior to him putting his hands on—

**Deputy Lowe:** No, I did not.

\* \* \*

**Prosecutor:** So did it appear to you he was actually touching it at that time?

**Deputy Lowe:** I couldn't tell if it was touching it at the time. I could see—obviously I could see part of a white baggy underneath the palm of his hand. I don't know how much of the baggy. I just know when I saw it, I could see the white baggy sticking out from the palm of his hand.

(Tr. at 140-45).

**{¶32}** Deputy Lowe's testimony was corroborated by the testimony of the other law enforcement officers who also testified to Gervin's location upon entering

the apartment, which was in close proximity to where the white plastic baggy was found. For example, Officer Andrew Isom, a Marion Police Officer with the MARMET unit, testified "[w]hen I got up there, [Gervin] was laying on the floor and the bag was just to his right." (Tr. at 177). In addition, photographs taken at the scene depicted the location on the floor where the drugs were found, which was also the same location where Gervin was laying on the floor according to the testimony at trial.

{¶33} In construing the facts most strongly in favor of the prosecution as we are required to do in considering a sufficiency challenge, we believe that the State presented sufficient evidence to prove beyond a reasonable doubt that Gervin possessed the cocaine and heroin found in the white plastic baggy on the floor of the apartment. Deputy Lowe testified that he saw the white plastic baggy, which was later determined to contain cocaine and heroin, under Gervin's right palm after he ordered Gervin to the ground. Deputy Lowe further testified that he did not see the baggy on the floor prior to Gervin going to the ground. Officer Isom also observed the white baggy on the ground laying to the right of Gervin. This testimony along with the photographs demonstrating the location of the white plastic baggy on the ground near where the testimony at trial placed Gervin together provided sufficient evidence of Gervin's immediate physical possession of the drugs before his arrest.

Case No. 9-15-51

{¶34} Additionally, for the reasons outlined in our discussion of his sufficiency challenge, Gervin's drug possession convictions are not against the manifest weight of the evidence. The jury's verdicts rest on its credibility determinations of the witnesses at trial. We note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In other words, "jurors are entitled to believe the testimony offered by the State's witnesses." *State v. Wareham*, 3d Dist. Crawford No. 3-12-11, 2013-Ohio-3191, ¶ 25, citing *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. In this instance, the jury clearly believed the State's version of events and assigned weight accordingly. Based upon the evidence it had before it, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. Accordingly, Gervin's second assignment of error is overruled.

{¶35} For all these reasons, the assignments of error are overruled and the judgment of conviction and sentence is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

-20-