[Cite as *State v. Jones*, 2023-Ohio-844.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220007 |
| | | TRIAL NO. B-2002096 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | |
| MICHAEL JONES, | : | *O P I N I O N.* |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Case Remanded

Date of Judgment Entry on Appeal: March 17, 2023

*Melissa A. Powers,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender*,* and *David H. Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

{¶1}   Defendant-appellant Michael Jones challenges his convictions for drug possession and drug trafficking in four assignments of error. Finding merit to his first assignment of error, we hold that Jones received unconstitutionally ineffective assistance from his trial counsel at the suppression hearing. We therefore order a limited remand to the trial court for further proceedings consistent with this opinion and stay our consideration of the remainder of Jones's assignments of error.

## I. Facts and Procedure

{¶2}   In 2020, the Cincinnati Police Department received anonymous complaints of drug activity occurring at 787 Clinton Springs Avenue in Cincinnati, Ohio. During the weeks of surveillance, police watched Jones come and go from the house. One morning, Officers Mark Bode and Tom Weigand watched Jones exit from the house and enter the passenger seat of a black van. Police followed and watched as the van stopped beside a parked car and exchanged something through the passenger-side window. At a nearby gas station, police arrested Jones and found cash, a scale, a wallet, keys, cell phones, and what appeared to be a small amount of drugs. Police took Jones to the Hamilton County Justice Center.

{¶3}   With Jones in jail and his keys in hand, a group of officers led by Sergeant James Davis returned to 787 Clinton Springs Avenue. At the house, officers opened the front door and announced their presence. William Gaston came to the door and told the officers that there was no one in the house. Davis informed Gaston that they were there "doing a search warrant" and placed Gaston in handcuffs on the porch before officers performed a protective sweep of the house. During the sweep, officers took note of a small safe in Jones's third-floor room and found another person, Matthew Allwood, on the second floor of the house.

2

{¶4} Two hours after their arrival, officers removed Gaston's handcuffs for him to sign a consent-to-search form. Officers took the safe to the police station and, based on information from the sweep, obtained a search warrant to open the safe. Relevant here, officers found cash, four digital scales coated in a cocaine and methamphetamine residue, a heroin-fentanyl mixture, methamphetamine, fentanyl, methadone, and flualprazolam.

{¶5} Based on items found in the safe, the state indicted Jones on a total of ten charges, including drug trafficking, aggravated drug trafficking, drug possession, and aggravated drug possession. Before trial, Jones moved to suppress the evidence seized from the safe, arguing that Gaston lacked authority to consent to a search of 787 Clinton Springs Avenue and that the information provided to the magistrate in the affidavit for the search warrant was insufficient. The evidence at the hearing consisted of body-camera footage and testimony from the homeowner, Jones, Gaston, Officer Bode, and Officer Wiegand. The trial court denied the motion to suppress. After a two-day trial, the jury convicted Jones of all charges. The trial court imposed an aggregate 22-to-24-year-and-6-month sentence.

{¶6} On appeal, Jones raises four assignments of error concerning the suppression of evidence, the sufficiency and manifest weight of the evidence, and the constitutionality of his sentence.

## II. Law and Analysis

{¶7} Jones maintains that he received unconstitutionally ineffective assistance of counsel in violation of his Sixth Amendment rights. Jones argues that counsel was ineffective for failing to challenge the evidence from the safe as a product of coercion and a protective sweep in violation of the Fourth Amendment.

<u>Defendants Have a Constitutional Right to the Effective Assistance of Counsel</u>

{**¶8**}   The Sixth Amendment guarantees an accused person the right to counsel, requiring the effective assistance of an attorney "who plays the role necessary to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is so because "it is through counsel that the accused secures his other rights." *Kimmelman v. Morrison*, 477 U.S. 365, 377, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). But trial counsel is not per se ineffective for failing to file a motion to suppress or omitting arguments in support of suppression. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94. Rather, to succeed on a claim alleging ineffective assistance of counsel, Jones must show that his counsel's performance was deficient and that he suffered prejudice because of that deficient performance. *Strickland* at 687.

{**¶9**}   Legal representation is constitutionally deficient when it falls "below an objective standard of reasonableness" according to "prevailing professional norms." *Id.* at 687-688. In other words, a "court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." *Id.* at 688. Counsel's incompetence must "undermine[] the proper functioning of the adversarial process" and cast doubt on the notion that the trial court "produced a just result." *Id.* at 686. When reviewing counsel's assistance, we "must indulge a strong presumption" that the act or omission in question was sound trial strategy, and that all significant decisions were made "in the exercise of reasonable professional judgement." *Id.* at 687-688.

**{¶10}** When arguing that trial counsel was ineffective for failing to litigate a suppression issue, a defendant must prove that the omitted challenge had arguable merit. *See State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65; *see also State v. Payton,* 119 Ohio App.3d 694, 704, 696 N.E.2d 240 (11th Dist.1997) ("Where there exist reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant reversal."). With that in mind, we begin with Jones's arguments concerning the consent given to police and the protective sweep.

<u>Gaston's Consent to Search Was Involuntary</u>

**{¶11}** The Fourth Amendment to the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." A warrantless search of a home is presumptively unconstitutional unless an exception applies. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Relevant here, a warrantless search of a home may be constitutional when officers obtain consent to search the home from a person with authority over the premises. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To justify a search as consensual, the Fourth Amendment requires that "consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Whether consent was voluntary depends on the totality of the circumstances surrounding the consent. *State v. Sieng*, 10th Dist. Franklin No. 18AP-39, 2018-Ohio-5103, ¶ 38, citing *Roberts* at ¶ 99, and *Schneckloth* at 227.

{¶12} The body-camera footage in the record shows that officers opened the front door of 787 Clinton Springs Avenue and announced their presence. Gaston approached the door and stepped onto the porch, where he began speaking with Sergeant Davis. As Gaston complied with Davis's instructions to sit in a chair on the porch, Davis stated, "We've got—we're going to be doing a search warrant here." After Gaston repeatedly indicated that he was alone in the house, officers entered the home and announced, "POLICE DEPARTMENT, SEARCH WARRANT." The officers conducted a sweep of the home. Two hours later, Gaston is seen on the porch in handcuffs surrounded by officers, with several officers lingering inside of the home. Gaston was handed a consent-to-search form and informed by police that "it will speed up our process." Moments later, officers can be heard discussing the safe.

{¶13} The totality of the circumstances show that the signed consent-to-search form was not a product of consent, but an acquiescence to a claim of lawful authority. "[T]here can be no consent" when the consent "had been given only after the official conducting the search has asserted that he possesses a warrant." *Bumper* at 548. When officers identify a warrant as the basis of authority for searching a home, they communicate "that the occupant has no right to resist the search." *Id.* These instances are "instinct with coercion" and "[w]here there is coercion[,] there cannot be consent." *Id.* at 549. Indeed, "[t]he result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all." *Id.* at 549-550.

{¶14} Gaston signed the consent-to-search form after he was made to believe that the officers were at the home to execute a search warrant, and after a team of officers swept through the house with Gaston on the porch in handcuffs. At that point,

6

arguably, Gaston had no choice but to cooperate. Therefore, Jones's trial counsel had a reasonable basis to challenge Gaston's consent as coerced and involuntary.

Protective Sweeps Must Be Justified

{¶15} As Jones points out, officers discovered the safe during a protective sweep of the home. Under the Fourth Amendment, protective sweeps are constitutional for the narrow purpose of ensuring the safety of officers who are lawfully present in a home. *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (describing the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."). This principle has been extended to situations where no arrest is made, provided that the circumstances warrant a protective sweep and "the officers entered the residence lawfully." *State v. Nelson,* 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 17; *see State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 189, citing *United States v. Taylor*, 248 F.3d 506, 513-514 (6th Cir.2001).

{¶16} To justify a protective sweep, there must be " ' " 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing," that the area swept harbor[s] an individual posing a danger to the officer or others.' " *Nelson* at ¶ 17, quoting *Buie* at 337, quoting *Michigan v. Long,* 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This requires " 'more than ignorance or a constant assumption that more than one person is present in a residence.' " *State v. Byrd*, 2d Dist. Montgomery No. 27340, 2017-Ohio-6903, ¶ 32, quoting *United States v. Archibald*, 589 F.3d 289, 300 (6th Cir.2009). For

instance, the unconstitutional sweep in *Byrd* was "more consistent with conducting a protective sweep as a matter of course rather than doing so due to any heightened safety concerns derived from particular observations or information the officers obtained after arriving" at the house. *Id.*

{¶17} Based on the body-camera footage and officer testimony, there was a reasonable basis to challenge the constitutionality of the protective sweep. Nothing in the body-camera footage or officer testimony gives rise to a reasonable suspicion of danger in the house warranting a sweep. There is no indication that officers heard any sounds, or saw any movement, coming from inside of the house. In the footage, Gaston repeatedly stated that he was the only person in the house. Bode testified at the suppression hearing that he had no reason to believe there was anyone inside the house other than Gaston. There is nothing to explain why the officers conducted the protective sweep, other than a routine practice of conducting protective sweeps.

{¶18} Moreover, the officers finding Allwood on the second floor of the house did not justify the sweep. A court determining whether a protective sweep is justified must limit its examination to "the events which occurred leading up to [the sweep]." *See Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Indeed, the touchstone of Fourth Amendment analysis is "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Id.* In other words, anything found during the sweep is irrelevant to whether the sweep was justified.

{¶19} Therefore, Jones's trial counsel had a reasonable basis to challenge the protective sweep as unconstitutional.

<u>Trial Counsel's Assistance Must Be Effective</u>

**{¶20}** Turning to deficiency, "[t]rial counsel has a duty to conduct a reasonable investigation to determine possible defenses or to make a reasonable decision that a particular investigation is unnecessary." *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 31. Yet, even if some evidence in the record supports suppression, " 'counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.' " *Id.* at ¶ 28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 13.

**{¶21}** The record indicates that trial counsel was aware that suppressing the evidence recovered from the safe was critical, and we discern nothing to suggest that raising these arguments was futile. Counsel either failed to investigate these issues or disregarded the claims in spite of the clear application of *North Carolina v. Bumper* and *Maryland v. Buie* to the facts of this case. Regardless, omitting these challenges from the motion to suppress fell outside the scope of competent assistance. Absent that deficient assistance, there is a reasonable probability that the outcome of the trial would have been different. Officers relied on the information gathered during the sweep to secure a search warrant. At trial, Davis and Bode testified about the recovery of the safe, and both the drugs and lab reports were entered into evidence. Therefore, we hold that Jones suffered prejudice from the deficient performance.

**{¶22}** The state maintains that we are ill-equipped, based on the record, to review Jones's ineffective-assistance-of-counsel claim on direct review. Specifically, the state relies on *State v. Gervin,* 3d Dist. Marion No. 9-15-51, 2016-Ohio-5670, to question the adequacy of the record. The record in *Gervin* was inadequate to determine whether the police complied with Ohio's knock-and-announce statute and lawfully entered Gervin's home. *Id.* at ¶ 19. That was so because the only evidence of

the manner and mode of entry into the home was a testifying officer's cursory account of using a battering ram to enter the home. *Id.* at ¶ 21. But here, the record includes the body-camera footage played at both the suppression hearing and the trial. The circumstances surrounding Gaston's consent and the protective sweep are preserved in that footage. The record here is distinguishable from the record in *Gervin,* which lacked evidence of what occurred as the officers entered the home. *See id.* at ¶ 22.

Inevitable-Discovery Exception

{¶23} The state contends that the discovery of the safe and its contents was inevitable. Typically, the exclusionary rule "precludes the use in a criminal proceeding of evidence obtained in violation of the Fourth Amendment, 'to "compel respect for the constitutional guaranty." ' " *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 25, quoting *Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), quoting *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). But one exception to the exclusionary rule provides that "illegally obtained evidence may be admitted in a proceeding once the state establishes that the evidence would inevitably have been discovered in the course of a lawful investigation." *Id.* at ¶ 27. Under the inevitable-discovery exception, the state must show, by a preponderance of the evidence, a reasonable probability that the evidence would have been discovered apart from the constitutional violation. *Id.*

{¶24} The state maintains that recovering the safe was inevitable because the police would have procured a search warrant of the house based on the facts known to them before the protective sweep. The state argues that the anonymous complaints, police observations, arrest, and the items found on Jones provided the requisite probable cause to secure a warrant before the sweep. While informant tips may establish probable cause considering the totality of the circumstances, an anonymous

informant is "comparatively unreliable" and requires independent corroboration. *State v. Campbell*, 1st Dist. Hamilton No. C-140372, 2015-Ohio-1464, ¶ 14, quoting *Maumee v. Wiesner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999), citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Indeed, "[c]ourts must be wary of anonymous tips." *State v. Smith*, 163 Ohio App.3d 567, 2005-Ohio-5204, 839 N.E.2d 451, ¶ 1 (1st Dist.). Despite weeks of surveillance, the record shows that officers did not observe any drug-related activity at the house.

{¶25} More to the point, the state's argument is too speculative. The Fourth Amendment demands that inevitability must be couched in terms of a probability rather than a possibility. *State v. Taylor*, 138 Ohio App.3d 139, 151, 740 N.E.2d 704 (2d Dist.2000). The inevitable-discovery exception does not apply merely when officers "could have obtained a warrant, intended to obtain a warrant, or later obtained a warrant." *State v. Foster*, 3d Dist. Allen No. 1-14-54, 2015-Ohio-3401, ¶ 15. Rather, "investigative procedures independent of the illegal conduct that would have ultimately led to the inevitable discovery of the evidence must be in place and implemented prior to the discovery of the evidence by illegal means." *State v. Porter,* 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 43 (2d Dist.). The inevitable-discovery exception "may not be used however, to rehabilitate evidence seized without a warrant." *Foster* at ¶ 9. When we review the record, there must be some evidence "that would indicate that []steps were taken to obtain a warrant." *State v. Hatcher*, 11th Dist. Ashtabula No. 2002-A-0100, 2004-Ohio-2451, ¶ 23. In *Hatcher,* the court rejected the application of the exception despite the arguable presence of probable cause to obtain a search warrant "because there were no steps taken in an attempt to do so." *Id.* At the other end of the spectrum, the application of the inevitable-discovery exception is clear when officers secured a search warrant for the

defendant's home before the constitutional violation. *State v. Riffle*, 8th Dist. Cuyahoga No. 107352, 2019-Ohio-3271, ¶ 17 ("no question the marijuana located inside and outside the home would have been located and seized pursuant to the search warrant, regardless of Riffle's comments including 'there is weed downstairs.' ").

{¶26} In its current form, the record is more consistent with *Hatcher* and lacks any indication that the officers were securing a warrant. To hold otherwise " 'would essentially eliminate the warrant requirement and encourage police to proceed without a neutral and detached magistrate's probable cause determination.' " *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 30, quoting *State v. Coyle*, 4th Dist. Ross No. 99 CA 2480, 2000 Ohio App. LEXIS 1079 (Mar. 15, 2000). Application of the inevitable-discovery exception is improper in situations that "encourage police to engage in their own Fourth Amendment speculation without a prior probable cause determination by a court and foster a 'search-first' mentality that disregards constitutional safeguards." *Id.* at ¶ 30. Like most Ohio courts, we reject an application of the exception that would swallow the rule and demote the Fourth Amendment's warrant requirement where "a court later determines that the police, in fact, had probable cause to perform the warrantless search." *Id.*[1]

{¶27} Therefore, we sustain Jones's first assignment of error. Trial counsel was constitutionally ineffective for failing to challenge both the protective sweep of the home and the consent given to the officers to search the home. The ineffective assistance of trial counsel deprived Jones of his Sixth Amendment right to counsel.

---

[1] *But see State v. Farrey*, 9th Dist. Summit No. 26703, 2013-Ohio-4263, ¶ 17 (applying inevitable-discovery to money found on Farrey during a *Terry* search because officers had probable cause to arrest Farrey and "would have discovered the cash during a search incident to arrest.").

{¶28} While we hold that Jones's trial counsel was unconstitutionally ineffective, we recognize that trial counsel's ineffective assistance prevented the state from fully developing the facts surrounding the protective sweep, the search, and inevitable discovery. Nothing in this opinion prevents the parties from developing these arguments on remand. Accordingly, we remand the case to the trial court for the limited purpose of permitting Jones's counsel to submit a new motion to suppress that raises the constitutional issues omitted by his previous counsel, and for the trial court to hold a new suppression hearing to determine whether the evidence from the safe should be suppressed. At the hearing, the parties are entitled to raise arguments and present evidence for or against the suppression of the evidence. The trial court must analyze the suppression of the evidence in a manner consistent with this opinion.

{¶29} In his remaining assignments of error, Jones challenges the denial of his motion to suppress, the sufficiency and manifest weight of the evidence produced at trial, and the constitutionality of Ohio's Reagan Tokes Law. We stay consideration of the remainder of Jones's assignments of error until the trial court determines whether the evidence from the safe should be suppressed.

### III. Conclusion

{¶30} We sustain Jones's first assignment of error and order a limited remand of this matter to the trial court for further proceedings to consider the evidence at the suppression hearing and make a legal determination consistent with this opinion. We stay our consideration of Jones's remaining assignments of error.

Case remanded.

**BERGERON, P.J.,** concurs.
**WINKLER, J.,** dissents.

**WINKLER, J.,** dissenting.

13

{¶31}  I respectfully dissent from the majority's opinion holding that Jones was denied the effective assistance of counsel.  I would overrule Jones's four assignments of error, and I would affirm his convictions.

{¶32}  The defendant bears the burden to show ineffective assistance of counsel.  *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 12.  Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the proceeding was unreliable or fundamentally unfair because of counsel's performance.  *Lockhart v. Fretwell*, 506 U.S. 364, 369-370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *State v. Carter*, 72 Ohio St.3d 545, 558,  651 N.E.2d 965 (1995); *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 38.  I do not believe that his trial counsel's alleged defective performance rendered the result of the proceeding unreliable or fundamentally unfair.

{¶33}  As a preliminary matter, a review of Jones's trial testimony leads me to question whether Jones had standing to contest the search of the safe.  At the hearing on the motion to suppress, trial counsel successfully limited the scope of Jones's testimony in order to establish standing to contest the protective sweep of the house and discovery of the safe.  Jones's limited testimony established that his cousin's father owned the house, that he grew up there, and that he stayed there overnight on occasion.  He estimated that in April 2020, he stayed there three to four times.  He also stated that he was always welcome there.  I do not believe that this testimony was sufficient to establish standing, and the issue is further undermined by Jones's trial testimony that he had never lived in the house, that he had never spent more than one night there, that he had no access to the locked third floor where the safe was found, and that he knew nothing about the safe.  *See State v. Brown*, 1st Dist. Hamilton No.

14

C-120327, 2013-Ohio-2720, ¶ 11-14; *State v. Draper*, 6th Dist. Fulton No. F-04-026, 2005-Ohio-920, ¶ 9-16. "[A]n overnight guest may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Brown* at ¶ 12, quoting *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

{¶34} Further, many of the issues Jones raises were not fully developed in the trial court because he failed to raise them. The defendant must specifically raise the grounds upon which the validity of the search or seizure is challenged to give the prosecutor notice of the basis of the challenge. *Xenia v. Wallace*, 37 Ohio St.3d 216, 219, 524 N.E.2d 889 (1988); *State* v. *Billings*, 1st Dist. Hamilton Nos. C-200245 and C-200246, 2021-Ohio-2194, ¶ 15-16. The prosecutor is not required to anticipate the specific legal and factual grounds for a defendant's challenge to a warrantless search or seizure. The defendant must clarify the legal and factual grounds upon which the defendant challenges the evidence so that the prosecutor may adequately prepare for the suppression hearing. *Xenia* at 218. Failure of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal that may only be reversed upon a showing of plain error. *Billings* at ¶ 17; *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 33-35. The only issues raised in the motion to suppress were Jones's claims that Gaston did not have authority to consent to the search because he was not the owner of the property and the validity of the search warrant for the safe.

{¶35} Courts have held that the record at trial is generally inadequate to determine the validity of a suppression argument on appeal. *See State v. Gervin*, 3d Dist. Marion No. 9-15-51, 2016-Ohio-5670, ¶ 23; *State v. Rivera*, 12th Dist. Butler No.

CA2011-10-194, 2012-Ohio-3755, ¶ 14; *State v. Siders*, 4th Dist. Gallia No. 07CA10, 2008-Ohio-2712, ¶ 11. But if the defendant can meet his or her burden to show ineffective assistance of counsel through the trial testimony, the defendant can prevail on a claim that defense counsel did not provide effective assistance by failing to raise an issue in the trial court. *See Rivera* at ¶ 14; *Siders* at ¶ 11. Jones has not met that burden.

{¶36} I agree with the majority's conclusion that Gaston's consent to the search was involuntary because the police officers told him that they had a search warrant before he consented to the search. *See Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Nevertheless, despite our limited record, considering the state was under no obligation to elicit testimony in support of the protective sweep, I believe the protective sweep was justified. Even if it was not, the safe would have inevitably been discovered. Consequently, the trial court properly denied Jones's motion to suppress, and his counsel was not ineffective for failing to raise the issue.

{¶37} "A 'protective sweep' is a quick and limited search of premises, conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person may be hiding." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). There must be articulable facts, which, taken together with the reasonable inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Id.*

{¶38} In this case, the police officers were investigating neighborhood complaints that Jones was engaged in drug trafficking at 787 Clinton Springs Avenue. They conducted surveillance for two weeks, and they saw activity indicative of drug

trafficking. They knew that Jones had an open felony warrant, and they saw a hand-to-hand transfer between the van in which Jones was a passenger and a parked car. Jones was searched, and the officers found the working tools of a drug dealer, a digital scale with cocaine residue, $1,000 cash, three cell phones, and a baggie containing a powdery substance, which was later found not to be a drug. Jones denied any connection to the house on Clinton Springs Avenue, though officers had seen him leave the house and he had a key that fit into the lock.

{¶39} When investigating drug activity, police officers have a legitimate concern for their own safety due to the "nexus between drugs and guns." *State v. Thompson*, 1st Dist. Hamilton No. C-050400, 2006-Ohio-4285, ¶ 11. "The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." *State v. McQuitty*, 12th Dist. Warren No. CA2004-09-113, 2005-Ohio-5905, ¶ 12, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 12.

{¶40} Further, the risk of danger inherent in the confines of a home or otherwise on an "adversary's turf" is greater than in an on-the-street encounter. Therefore, the officers may take reasonable steps to ensure their own safety. *State v. Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162 (1st Dist.2004), citing *Buie*, 494 U.S. at 333-334, 110 S.Ct. 1093, 108 L.Ed.2d 276. "An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." *Buie* at 333.

{¶41} The officers had probable cause for a warrant to search the residence at 787 Clinton Springs Avenue, and they would have obtained one had they not been mistaken that Gaston's consent was voluntary. They would have been justified in

17

securing the premises until they obtained that warrant. Even though Gaston had claimed that he was the only person present in the residence, the officers were justified in doubting his credibility, and they did not have to risk their safety and the safety of others, based on that claim. Gaston's claim of being the only person at the house was untrue because during the protective sweep, the officers found Allwood, who had open warrants, hiding on the second floor. The officers had articulable facts, which, taken together with the reasonable inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbored an individual posing a danger to those at the scene. Therefore, the protective sweep was justified.

{¶42} The "ultimate touchstone of the Fourth Amendment is 'reasonableness.' Where concerns of officer safety are present, the United States Supreme Court has measured reasonableness by balancing the need for the search against the invasion the search entails." *State v. Nelson*, 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 17, citing *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), and *Buie* at 332. The invasion of the protective sweep was minimal compared to the need to protect officer safety, and the search was reasonable under the Fourth Amendment. *See Nelson* at ¶ 17-18.

{¶43} Additionally, the protective sweep was properly limited in scope. It consisted of a cursory inspection of the rooms in the house where an individual could hide. When the officers discovered the safe on the third floor of the house, they asked Gaston and Jones if they had a key, and both said that the safe was not theirs and they did not have a key. The officers then prepared an affidavit for a search warrant and did not open the safe until they had obtained that warrant. *See Buie*, 494 U.S. at 335-356, 110 S.Ct. 1093, 108 L.Ed. 276; *Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162, at ¶ 30.

{¶44} Further, admission of the evidence found during the search of the residence can be justified under the inevitable-discovery exception to the warrant requirement. Under that exception, illegally obtained evidence is admissible at trial if it is established that the evidence would have ultimately or inevitably been discovered during a lawful investigation. *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus; *State v. Pippin*, 1st Dist. Hamilton Nos. C-160380 and C-160381, 2017-Ohio-6970, ¶ 19. The state has the burden to show within a reasonable probability that police officers would have discovered the evidence by lawful means. *Perkins* at 196; *Pippin* at ¶ 19. The exception applies when evidence discovered during an illegal search would have been discovered during a later legal search and the second search inevitably would have occurred in the absence of the first. *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir.2002).

{¶45} The rationale for the inevitable-discovery exception is that the prosecution should not be placed in a worse position at trial because of some earlier police misconduct when the evidence gained would ultimately have been found in the absence of that misconduct. *Nix v. Williams*, 467 U.S. 431, 443-444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Perkins* at 195-196. "While the Exclusionary Rule is used to deny the admission of evidence unlawfully gained, and thereby to put the state in the same position it would have been absent evidence seized, the rule should not be used to put the state in a worse position by refusing evidence that would have subsequently been discovered by lawful means." *Perkins* at 196.

{¶46} Even if the protective sweep was improper, the discovery of the safe was inevitable given the facts and circumstances known to police before they entered the residence. The police officers could have frozen the scene to prevent any destruction or spoilage of evidence while they waited for a warrant to search the house. The facts

known by the officers would have provided sufficient probable cause to allow the officers to obtain a warrant.

{¶47} Under this assignment of error, Jones also argues that counsel was ineffective for failing to argue that Gaston did not have the actual or apparent authority to consent to the search of the third floor of the house. Gaston told the police officers that although he was not the owner of the house, he was its sole resident. The lawful tenant occupying the premises may consent to a search of the premises. *State v. Hill*, 1st Dist. Hamilton No. C-830716, 1984 Ohio App. LEXIS 10776, 11 (Sept. 26, 1984), citing *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and *State v. Carder*, 9 Ohio St.2d 1, 222 N.E.2d 620 (1966). Thus, Gaston had authority to consent to a search of the entire premises. Further, Jones denied that he lived on the third floor and that the safe was his. Consequently, counsel's failure to raise that issue did not prejudice Jones.

{¶48} In sum, Jones has not demonstrated that but for counsel's deficient performance, the result of the proceeding would have been different or that the result of the proceeding was unreliable or fundamentally unfair. Consequently, he failed to meet his burden to show ineffective assistance of counsel, and I would overrule his first assignment of error.

{¶49} In his second assignment of error, Jones contends that the trial court erred in denying his motion to suppress. Because I would hold that the safe would have been inevitably discovered, that the warrant was supported by probable cause, and that the police officer's mistaken statement that Gaston was the owner of the property did not affect the validity of the warrant, I would overrule Jones's second assignment of error. *See State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989); *State v. Martin*, 1st Dist. Hamilton No. C-200067, 2021-Ohio-2599, ¶ 11; *State v. Taylor,* 174

Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945, ¶ 15-17 (1st Dist.); *State v. Jordan*, 1st Dist. Hamilton No. C-060336, 2007-Ohio-3449, ¶ 9.

**{¶50}** In his third assignment of error, Jones contends that his convictions were not supported by sufficient evidence. Jones's arguments require his testimony to be believed. But in deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses. *Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, at ¶ 45. My review of the record shows that a rationale trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved all the elements of the offenses of which Jones was charged beyond a reasonable doubt. Therefore, I would hold that the evidence was sufficient to support his convictions. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 29.

**{¶51}** Jones also contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot hold that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Jones's convictions and order a new trial. Therefore, we cannot hold that they are against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Thomas* at ¶ 48. Again, Jones's arguments require that his testimony be believed, but matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *Thomas* at ¶ 48. Consequently, I would overrule Jones's third assignment of error.

**{¶52}** Finally, in his fourth assignment of error, Jones contends that the trial court erred in sentencing him to an indefinite prison term under the Reagan Tokes Law. In *State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, *appeal*

*allowed* 168 Ohio St.3d 1418, 2202-Ohio-3752, 196 N.E.3d 850, this court rejected the same arguments Jones now raises and held the Reagan Tokes Law to be constitutional. Consequently, I would overrule Jones's fourth assignment of error.

{¶53} In sum, I see no merit in Jones's arguments. I would overrule his four assignments of error and affirm his convictions in all respects. Further, even though I disagree with majority's conclusion that trial counsel's performance was constitutionally deficient, the proper remedy for a constitutional violation is not a remand to the trial court for further proceedings on a motion to suppress, but rather vacating Jones's convictions and ordering new trial. *See State v. Velez*, 9th Dist. Lorain No. 13CA010413, 2014-Ohio-4328, ¶ 17; *State v. Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, ¶ 20.

Please note:

The court has recorded its entry on the date of the release of this opinion.